UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------X
ERIC DEBERRY,

                                Petitioner,              REPORT AND
                                                           RECOMMENDATION

    -against-

                                                                       05 CV 5286 (NG)(RML)

ELLIOT SPITZER, New York State Attorney
General, and DALE ARTIS, Superintendent,

                                Respondents.
------------------------------------------------------------X

LEVY, United States Magistrate Judge:

        Petitioner Eric Deberry ("Deberry" or "petitioner") filed this habeas corpus petition pursuant to 28 U.S.C. § 2254 on November 9, 2005. By order dated October 23, 2006, the Honorable Nina Gershon, United States District Judge, referred the matter to me for a Report and Recommendation. On June 5, 2007, I granted petitioner's motion to stay the proceedings pending his efforts to exhaust the ineffective assistance of counsel arguments included in his habeas application. (Order, dated June 5, 2007.) After the termination of these collateral proceedings in state court, on March 24, 2010, I granted petitioner's motion to lift the stay. (Order, dated Mar. 24, 2010.) The parties have since filed supplemental submissions, with briefing completed on January 17, 2011. For the reasons stated below, I respectfully recommend that the petition be denied.

### BACKGROUND AND FACTS

        This case arose out of events that transpired in Brooklyn, New York, on July 11, 1999. (Affidavit of Rhea A. Grob, Esq., sworn to June 30, 2006 ("Grob Aff."), ¶ 4.) At about 4:45 a.m. on that date, Kareem Collins ("Collins") was walking home from the Utica Avenue train station, wearing a blue, red, and white jersey, when he was approached by two men.

(Transcript of Trial, dated Jan. 10–18, 2000 ("Trial Tr."), at 58–59.)  One of the two men confronted Collins, telling him that he was "[t]ired of all y'all Crip niggers coming through here."[1]  (Id. at 62.)  Collins ignored him and turned to walk away.  (Id.)  The man followed Collins, pulled out a gun, and told him to drop his bag, which contained newly purchased boots.  (Id. at 64–65.)  He then fired a handgun at Collins, striking him several times in the body and arm.  (Grob Aff. ¶ 4.)

On July 12, 1999, while Collins was in the hospital recovering from the shooting, Detective Patricia Tufo of the Kings County Police Department visited him and presented him with a photo array of possible assailants.  (Trial Tr. at 130.)  Collins identified petitioner as his assailant (id.), and on August 3, 1999, petitioner was arrested for the incident.  (Petitioner's Memorandum of Law, dated Jan. 18, 2008 ("Pet'r Mem."), at 6.)  On August 4, 1999, during a line-up, Collins once again identified petitioner as his assailant.  (Id. at 2; Trial Tr. at 73.)

Kings County Indictment Number 6281/99 charged petitioner with Attempted Murder in the Second Degree (N.Y. Penal Law § 110/125.25[1]); two counts of Robbery in the First Degree (N.Y. Penal Law § 160.15[1], [2]); Robbery in the Third Degree (N.Y. Penal Law § 160.05); two counts of Assault in the First Degree (N.Y. Penal Law § 120.10[1], [4]); Assault in the Second Degree (N.Y. Penal Law § 120.05[2]); Assault in the Third Degree (N.Y. Penal Law § 120.00[1]); Criminal Possession of a Weapon in the Second, Third, and Fourth Degrees (N.Y. Penal Law §§ 265.03[2], 265.02[4], 265.01[1]); Menacing in the Second Degree (N.Y. Penal Law § 120.14[1]); and Petit Larceny (N.Y. Penal Law § 155.25).  (Grob Aff. ¶ 5.)

On January 6, 2000, petitioner's trial commenced.  Collins testified under oath

---

[1]Members of the Crips gang are known to wear the color blue.  (Trial Tr. at 201.)

and identified petitioner as his assailant. (Trial Tr. at 60.) He also testified that on the night of the incident he had gone to a movie in Manhattan and that, after leaving the movie theater at around 1:30 a.m., he had gone to a restaurant called B.B.Q.'s., where he stayed until it closed at 4:00 a.m. (Id. 54–56.)

During the course of the trial, on January 11, 2000, petitioner asked the trial court to order subpoenas to compel B.B.Q.'s management to testify that, contrary to Collins's testimony that he stayed at B.B.Q.'s until 4:00 a.m., the restaurant closes at 1:30 a.m. (Id. at 144). The court refused to do so, finding that testimony as to the restaurant's closing time "will be collateral because it does not relate to any element of the crime charged." (Id. at 158.) Following the court's ruling, defense counsel stated that he "wish[ed] to make the strongest attempt to preserve [an objection] on the record." (Id. at 159.) As a result of the court's ruling, petitioner did not introduce evidence concerning the restaurant's closing time.

Along with Collins, the prosecution presented seven other witnesses, including Detective Tufo. Petitioner did not testify but he presented as an alibi witness his neighbor Mary Kirby ("Kirby"). Kirby testified under oath that immediately after she heard the shooting in question, she saw petitioner leaning out of his window. (Id. at 215.)

On January 8, 2000, the jury acquitted petitioner of the attempted murder count but found him guilty of one count each of first-degree assault (N.Y. Penal Law § 120.10[1]), first-degree robbery (N.Y. Penal Law § 160.15[2]), and second-degree criminal possession of a weapon (N.Y. Penal Law § 265.03[2]). (Grob Aff. ¶ 6.)

Prior to sentencing, petitioner filed a motion pursuant to N.Y. Crim. Proc. Law § 330.30 to set aside the verdict, on the ground of alleged newly discovered evidence. (Id. ¶ 7.) In

support of his motion, petitioner submitted an affidavit from Jerome Malone, who claimed that Roberto Velasquez ("Velasquez") had confessed to him that he had committed the shooting, and a tape recording allegedly containing Velasquez's confession. (Id.) After hearing oral argument and listening to the tape recording, the trial court denied petitioner's motion to set aside the verdict, finding that the purported newly discovered evidence was unpersuasive. (Sentencing Transcript, dated Mar. 28, 2000 ("Sentencing Tr."), at 13; see also Grob Aff. ¶ 8.) The court found that the affidavit was hearsay and that "it's really far from convincing that the statements relate to this case" because the recording did not identify the time or date to which the speaker was referring. (Sentencing Tr. at 13.) The trial court then sentenced petitioner as a persistent felony offender to concurrent terms of imprisonment of twenty-five years to life on the robbery count, twenty years to life on the assault count, and twenty years to life on the weapon possession count. (Sentencing Tr. at 23; Grob Aff. ¶ 9.) Petitioner filed a notice of direct appeal on April 27, 2000. (Grob Aff. ¶ 10.)

During the pendency of his direct appeal, by papers dated January 3, 2003, petitioner moved before the trial court to vacate his judgment of conviction pursuant to N.Y. Crim. Proc. Law § 440.10. (Id. ¶ 11.) Petitioner, represented by counsel, alleged that newly discovered evidence warranted vacatur of his conviction. (Pet'r Mem. at 13; Grob Aff. ¶ 11.) In support of the motion, petitioner contended that there were five people to whom Velasquez had confessed to shooting Collins. (Memorandum and Order, dated July 16, 2003, at 2–3.) Petitioner also submitted an affidavit from Velasquez himself, in which Velasquez purportedly stated that he had shot Collins in self-defense. (Pet'r Mem. at 13; Grob Aff. ¶ 11.) The trial court found that petitioner "failed to show that the statements made to the five named individuals qualify as

admissible evidence at the requested retrial" and, therefore, that the statements did "not qualify as newly discovered evidence." (Memorandum and Order, dated July 16, 2003, at 6.)

However, the court granted petitioner an evidentiary hearing regarding Velasquez's supposed confession. (Id. at 8.) Petitioner's trial counsel, Henry Joseph ("Joseph"), petitioner's brother, Isaac Deberry, and Velasquez all testified under oath at the hearing. Joseph stated that he learned very early on in his representation of petitioner that Velasquez had confessed to the crime but that he did not try to obtain a material witness order to secure Velasquez's testimony because he believed that, if ordered to appear, Velasquez would have asserted his Fifth Amendment rights. (Hearing Transcript, dated Oct. 17, 2003 ("Oct. 17 Hearing Tr."), at 4, 6.) He also stated that he believed it was generally a "bad idea" to put a reluctant witness on the stand because "you don't know what they are going to say." (Id. at 20.) Joseph also testified that he had been constrained by limited finances, in his investigations of Velasquez and of statements individuals had made to the police after the crime (Id. at 7–9.) However, he stated that he pursued diligent alternative efforts to prove petitioner's innocence, including going to the scene of the shooting, learning the opening and closing hours of B.B.Q.'s, and interviewing an alibi witness. (Id. at 21–22.) Isaac Deberry testified that Velasquez confessed to him "three or four times" that he had been Collins's assailant. (Id. at 27.) Finally, Velasquez testified that he had shot Collins and stated that he had refused to come forward earlier because he "was scared." (Hearing Transcript, dated Dec. 11, 2003 ("Dec. 11 Hearing Tr."), at 12.)

Following the hearing, the trial court denied petitioner's motion to vacate, holding that it was legally insufficient to establish that the evidence was newly discovered. (Memorandum Decision, dated June 22, 2004, at 5.) The court highlighted the fact that "[t]he

unequivocal testimony of defendant's trial counsel . . . establishe[s] that he had full knowledge of Velasquez . . . well before the trial." (Id. at 4.) Moreover, the court found that "Velasquez's testimony appeared closely tailored to serve only his own and defendant DeBerry's interest" and, "[a]t best, Velasquez's testimony strains credulity and there is little possibility that it would sway any jury." (Id. at 5–6, 7.)

On August 17, 2004, petitioner requested leave to appeal the trial court's denial of his motion to vacate. (Grob Aff. ¶ 15.) In addition to arguing that the trial court erred in concluding that Velasquez's testimony did not warrant a new trial, petitioner claimed, for the first time, that his trial counsel had been ineffective for failing to present Velasquez and another individual, Norman Biscette ("Biscette"), who also purportedly would have provided exculpatory evidence. (Id.) On September 17, 2004, the Appellate Division denied petitioner leave to appeal the trial court's decision denying petitioner's motion to vacate his judgment of conviction. (Id. ¶ 16.)

On July 27, 2004, petitioner perfected his direct appeal to the New York State Appellate Division, Second Department. (Id. ¶ 14.) In his brief, petitioner argued that: (1) the trial court's decision not to order subpoenas for one or more witnesses to testify that B.B.Q.'s closed at 1:30 a.m. violated his Sixth Amendment right to present a defense; and (2) the prosecution's failure to disclose to the jury Collins's purported perjury that he had been at the restaurant immediately prior to arriving at the crime scene violated petitioner's due process right to a fair trial. (See generally Brief Submitted in Support of Appellant-Defendant's Direct Appeal, dated June 24, 2004.) On April 11, 2005, the Appellate Division affirmed petitioner's judgment of conviction. People v. Deberry, 792 N.Y.S.2d 343 (2d Dep't 2005). The court found that "the

defendant's contention that the trial court effectively deprived him of his right to present a defense by prospectively precluding a defense witness from testifying is unpreserved for appellate review," and that, "[i]n any event, the court providently exercised its discretion in precluding the witness from testifying in view of the collateral nature of the prospective testimony." Id. at 343–44 (citations omitted). In addition, the court held that the "defendant's remaining contentions are without merit." Id. at 344. The Court of Appeals denied leave to appeal. See People v. Deberry, 835 N.E.2d 668 (N.Y. 2005).

On November 9, 2005, petitioner, represented by new counsel, filed the instant petition. On June 5, 2007, I granted petitioner's motion to stay the proceedings pending petitioner's attempts to exhaust the ineffective assistance of counsel arguments included in his habeas application. (Order, dated June 5, 2007.)

On December 5, 2006, petitioner filed a motion under N.Y. Crim. Proc. Law § 440.10(1)(h) before the trial court to vacate his judgment of conviction. He alleged that he was denied effective assistance of counsel because his trial counsel failed to investigate exculpatory evidence and did not present Velasquez and Biscette as defense witnesses at trial. (See Memorandum Decision, dated July 26, 2007, at 1.) The trial court denied petitioner's motion on July 26, 2007, finding that defense counsel's decision not to call Velasquez as a witness was "purely tactical" and that petitioner never explained what testimony Biscette would have proffered, much less why the failure to present him constituted ineffective assistance of counsel. (Id. at 3.) On October 3, 2007, the Appellate Division denied petitioner leave to appeal the trial court's decision. (Decision and Order, dated Oct. 3, 2007.)

On February 25, 2008, petitioner filed another motion to vacate his judgment of

conviction under N.Y. Crim. Proc. Law § 440.10, again arguing that he was denied effective assistance of counsel. (Memorandum Decision, dated Apr. 6, 2009, at 2.) On petitioner's motion, the court withdrew the motion to vacate. (Memorandum Decision and Order, dated May 7, 2008.) Petitioner subsequently filed another motion to vacate the judgment premised on the same grounds as his previously withdrawn motion. In a decision dated April 6, 2009, the trial court denied petitioner's motion, finding his ineffective assistance claim to be without merit. (Memorandum Decision, dated Apr. 6, 2009.) The court noted that "Velasquez was essentially a hostile witness who would have asserted the Fifth Amendment if called to testify at trial" and that, "[i]n any event, his testimony strained credulity, and there is little possibility it would sway any jury." (Id. at 2.) On August 19, 2009, the Appellate Division denied petitioner leave to appeal this decision. (Decision and Order on Application, dated Aug. 19, 2009.)

On May 6, 2009, petitioner moved pursuant to N.Y. Crim. Proc. Law § 440.10 to reargue his previous motion to vacate his judgment of conviction based on ineffective assistance of counsel; he claimed that the court mistakenly denied his motion and overlooked the potential persuasiveness of Biscette's statement to the police that he had heard what sounded like a shootout, coupled with Velasquez's testimony that he had shot Collins in self-defense. (Memorandum Decision, dated Oct. 5, 2009, at 1.) The trial court denied his motion, finding that neither the failure to call Velasquez nor the failure to proffer Biscette's statement warranted reconsideration of the prior motion to vacate the conviction. (Id. at 2.)

On August 27, 2009, petitioner moved to set aside the verdict pursuant to N.Y. Crim. Proc. Law § 440.20(1), on the ground that it was unauthorized, illegally imposed, or otherwise invalid as a matter of law. Petitioner argued that he had been improperly sentenced

under N.Y. Penal Law § 70.08 as a violent felony offender. (Affidavit in Support of Motion to Set Aside Sentence, dated Aug. 27, 2009.) In a memorandum decision dated February 4, 2010, the trial court found that petitioner's prior convictions were in fact ineligible to qualify him as a persistent violent felony offender and ordered that he be resentenced. (Memorandum Decision, dated Feb. 4, 2010.) On March 16, 2010, the trial court resentenced petitioner to a term of twenty-five years of incarceration and five years of post-release supervision. (Resentencing Transcript, dated Mar. 16, 2010, at 6.)

On March 24, 2010, I granted petitioner's motion to lift the stay of the proceedings. (Order, dated Mar. 24, 2010.) On June 1, 2010, petitioner submitted a supplemental brief reasserting the claims made in his original petition. (See Petitioner's Supplemental Brief, dated June 1, 2010 (Dkt. Entry #26).) Respondent filed an opposition brief on December 10, 2010 (see Respondent's Opposition to Petitioner's Supplemental Letter, dated Dec. 10, 2010 (Dkt. Entry #28)), and, most recently, petitioner submitted a reply brief on January 17, 2011 (see Reply in Support, dated Jan. 17, 2011 (Dkt. Entry # 31)).

## DISCUSSION

Petitioner filed the instant habeas corpus petition on November 9, 2005. In his petition, he raises four grounds for relief. He contends that: (1) the trial court improperly prevented him from presenting exculpatory and impeaching testimony by a rebuttal witness; (2) the trial court improperly found that Velasquez's confession did not warrant a vacatur of his conviction; (3) the prosecution failed in its obligation to correct perjured evidence; and (4) trial counsel was ineffective.

A. Statute of Limitations

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") requires

a petitioner to file his or her petition in federal court within one year of "the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review . . . ." 28 U.S.C. § 2244(d)(1)(A). On July 1, 2005, the Court of Appeals denied petitioner leave to appeal. People v. Deberry, 835 N.E.2d 668 (N.Y. 2005). Petitioner filed this petition on November 9, 2005, well within this one-year deadline.[2] Petitioner has thus satisfied AEDPA's limitations requirement.

### B. Exhaustion of State Court Remedies

Before addressing the merits of a habeas corpus petition, the court must determine whether the petitioner has exhausted his state remedies. See 28 U.S.C. § 2254(b)–(c); Picard v. Connor, 404 U.S 270, 274 (1971). To satisfy this exhaustion requirement, the petitioner must have fairly presented at each available level of the state courts the same federal constitutional claims raised in his petition to the federal court. See Picard, 404 U.S. at 275–76; Klein v. Harris, 667 F.2d 274, 282–83 (2d Cir. 1981); Coleman v. Greiner, No. 97 CV 2409, 1999 WL 320812, at *2 (E.D.N.Y. May 19, 1999).

Petitioner raised his first and third claims—that the trial court violated the Sixth Amendment by preventing him from presenting testimony from a rebuttal witness and that the prosecution violated due process by failing to correct perjured evidence—on direct appeal. The Appellate Division denied both claims on the merits, see People v. Deberry, 792 N.Y.S.2d 343 (2d Dep't 2005), and the Court of Appeals denied leave to appeal. See People v. Deberry, 835 N.E.2d 668 (N.Y. 2005). Accordingly, these claims have been exhausted.

Petitioner unsuccessfully raised his other claims before the trial court under N.Y.

---

[2] As stated above, the petition was stayed from June 5, 2007 until March 24, 2010, so that petitioner could exhaust his ineffective assistance argument in state court.

Crim. Proc. Law § 440.10, in two separate motions, both of which were denied. (See Memorandum Decision, dated June 22, 2004, at 5; Memorandum Decision, dated July 26, 2007, at 1.) The Appellate Division denied both applications for leave to appeal the trial court's rejection of his § 440.10 motions. (Grob Aff. ¶ 16; Decision & Order, dated Oct. 3, 2007.) "A claim is fully exhausted once the Appellate Division has denied leave to appeal the denial of a 440.10 motion because further leave to the Court of Appeals is not available." Daniels v. Hollins, No. 02-CV-4495, 2006 WL 47412, at *1 n.2 (E.D.N.Y. Jan. 9, 2006); see also Klein v. Harris, 667 F.2d 274, 284 (2d Cir. 1981) ("[O]nce the Appellate Division denied [petitioner] leave to appeal the denial of his section 440.10 motion, he had reached the end of the road within the state system." (internal quotation marks omitted)). Thus, petitioner has exhausted his remedies under state law with respect to his other two claims.

C. Standard of Review

AEDPA provides the applicable standard for determining whether a petition for habeas corpus should be granted:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim . . . resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States.

28 U.S.C. § 2254(d)(1). Petitioner bears the burden of proving his claims by a preponderance of the evidence. Harned v. Henderson, 588 F.2d 12, 22 (2d Cir. 1978); see also Belleza v. Fisher, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, at *10 (E.D.N.Y. Aug. 6, 2003) ("Nothing in the AEDPA revisions changes this burden.").

D. The Trial Court's Denial of Motion to Vacate Petitioner's Conviction

Petitioner argues that the trial court erred in holding that Velasquez's confession did not require vacatur of petitioner's conviction, as it allegedly denied petitioner his Sixth Amendment right to present evidence in his defense. (Pet'r Mem. at 29.) According to petitioner, the trial court's decision not to vacate his conviction violated the Sixth Amendment because "[t]here is no doubt that Mr. Velasquez's confession is material to [petitioner's] defense and that [petitioner] had the compulsory right to present Mr. Velasquez as a witness." (Id. at 32.)

Petitioner's argument has no legal basis, as the Sixth Amendment's Compulsory Process Clause gives criminal defendants the right to compulsory process for obtaining witnesses in their favor only during the course of a trial. See, e.g., Washington v. Texas, 388 U.S. 14, 19 (1967) ("The right to offer the testimony of witnesses, and to compel their attendance, if necessary, is in plain terms the right to present a defense, the right to present the defendant's version of the facts as well as the prosecution's *to the jury* so it may decide where the truth lies." (emphasis added)). Petitioner never proffered Velasquez's testimony or his recorded or written confessions during the trial, so that the jury could weigh this evidence. He made the request to have Velasquez's confession admitted only after the conclusion of his trial and after the jury had already deliberated and reached a verdict. Petitioner cites no authority to support the proposition that the Sixth Amendment right to present evidence extends beyond a defendant's trial and can be a basis for inclusion of evidence first introduced on a post-trial motion to vacate. Therefore, this argument must be rejected.[3]

---

[3] Respondents generously construe petitioner's argument to be not that the trial court's ruling on the motion to vacate violated the Sixth Amendment, but that the trial court wrongfully decided the motion to vacate and that the evidence discovered after trial, namely Velasquez's
(continued...)

E. Trial Court's Refusal to Issue Subpoenas For Defense Witnesses

Petitioner claims that the trial court violated his Sixth Amendment right to present by refusing to issue subpoenas for B.B.Q.'s employees. (Pet'r Mem. at 34.) Petitioner claimed that the witnesses would rebut Collins's testimony that he stayed at B.B.Q.'s until 4:00 a.m. by testifying that it closes at 1:30 a.m. (See Trial Tr. at 144.) The trial court refused to issue the subpoenas because it found that the restaurant's closing time would "be collateral because it does not relate to any element of the crime charged" (id. at 158), and the Appellate Division concluded that the trial court had properly exercised its discretion in failing to do so. See Deberry, 792 N.Y.S.2d at 343–44 (The trial court "providently exercised its discretion in precluding the witness from testifying in view of the collateral nature of the prospective testimony.").

"The grant or denial of a request for subpoenas . . . is vested in the sound discretion of the trial judge and the denial of such is not tantamount to a denial of rights guaranteed by the sixth amendment." United States v. Bennett, 675 F.2d 596 , 598 (4th Cir. 1982) (citing United States v. Sellers, 520 F.2d 1281 (4th Cir. 1975)); see also United States v. Taylor, 562 F.2d 1345, 1362 (2d Cir. 1997) ("It is not improper to deny a request for a subpoena

---

³(...continued)
confession, necessitates habeas relief. (See Respondents's Memorandum of Law, dated June 30, 2006 ("Resp't Mem."), at 9.) Even assuming this were petitioner's argument, petitioner would not prevail on this ground. The trial court found that neither Velasquez's recorded confession nor his affidavit constituted newly discovered evidence because petitioner's trial counsel was aware of Velasquez and his confession and chose not to call him as a trial witness. (Sentencing Tr. at 13; Memorandum Decision, dated June 22, 2004, at 5.) These findings are entitled to a presumption of correctness, which can only be overcome with clear and convincing evidence that the state court's decision was erroneous. See U.S.C. § 2254(e)(1); Lawrence v. Artuz, 91 F. Supp.2d 538, 536 (E.D.N.Y. 2000). Petitioner has failed to provide such evidence or show how the trial court's decision was based on an unreasonable determination of the facts in light of the evidence presented in either of the state court proceedings.

. . . where the witness would only give irrelevant testimony not necessary to an adequate defense." (citations omitted)). Moreover, "[i]t is well-settled under New York and federal law that a witness may not be impeached through extrinsic evidence on matters collateral to the issues in the case." Felix v. Ercole, No. 09-CV-4003, 2010 WL 2606341, at *7 (E.D.N.Y. June 22, 2010) (citations omitted); see also Rosario v. Kuhlman, 839 F.2d 918, 925–26 (2d. Cir. 1988) ("The determinative question in deciding whether extrinsic evidence contradicting a witness's testimony is admissible is . . . whether the assertions that the impeaching party seeks to contradict are themselves material or collateral."). Petitioner's offer of proof suggested that the testimony would serve only to impeach the credibility of Collins with respect to the limited matter of where he was immediately prior to arriving at the scene of the crime. Since the testimony would only have the potential to contradict Collins' testimony concerning a collateral matter, the trial court properly denied the application for subpoenas and the Appellate Division's disposal of this claim was neither contrary to nor an unreasonable application of federal law.[4]

F. Alleged Use of Perjured Evidence

Petitioner next claims that the state knowingly presented perjured testimony and,

---

[4] Respondents also argue that petitioner's claim is barred by the procedural default doctrine because the Appellate Division found the claim unpreserved for appellate review. (See Resp't Mem. at 2–5.) Under the procedural default doctrine, federal habeas courts generally may not review a state court's denial of a state prisoner's federal constitutional claim if the state court's decision rested on an independent and adequate state procedural default. Coleman v. Thompson, 501 U.S. 722, 729 (1991) ("This court will not review a question of federal law decided by a state court if the decision of that court rests on a state law ground that is independent of the federal question and adequate to support the judgment."); Epps v. Commissioner of Correctional Servs., 13 F.3d 615, 617 (2d Cir 1994) (no federal habeas review of decisions based on independent and adequate state grounds "[b]ecause of comity and federalism concerns and the requirement that States have the first opportunity to correct their own mistakes"). Because petitioner's claim fails on the merits, it is unnecessary to address this issue.

in doing so, violated his due process rights. (Pet'r Mem. at 37.) Specifically, petitioner claims that the prosecution allowed Collins to testify that he was at B.B.Q.'s immediately prior to being shot even though it knew, or later learned, that this statement could not be true. (Id. at 27.) According to petitioner, the prosecution knew that Collins's testimony that he was at B.B.Q.'s until 4:00 a.m. was false because, in attempting to proffer a witness who would testify that the restaurant closed at 1:30 a.m., defense counsel had placed the prosecutor on notice that Collins was lying. (Id. at 39.)

It is well established that a defendant's due process rights are violated if the prosecutor knowingly uses perjured testimony to obtain a conviction. See United States v. Agurs, 427 U.S. 97, 103 (1976) ("[T]he Court has consistently held that a conviction obtained by the knowing use of perjured evidence is fundamentally unfair.") "The same result obtains when the State, although not soliciting false evidence, allows it to go uncorrected when it appears." Napue v. Illinois, 360 U.S. 264, 269 (1959). These principles do "not cease to apply merely because the false testimony goes only to the credibility of the witness." Id. However, to challenge a conviction because of a prosecutor's knowing use of false testimony, a defendant must establish that (1) false testimony was introduced, (2) the testimony either was or should have been known to the prosecution to be false, (3) the testimony went uncorrected, and (4) the false testimony was prejudicial. Shih Wei Su v. Filion, 335 F.3d 119, 127 (2d Cir. 2003). Petitioner's argument must fail because he has not established all of these necessary elements of his due process claim.

First, petitioner has failed to show that Collins committed perjury. "A witness commits perjury if he or she gives false testimony concerning a material matter with the willful intent to provide false testimony, as distinguished from incorrect testimony resulting from

confusion, mistake, or faulty memory." United States v. Monteleone, 257 F.3d 210, 219 (2d Cir. 2001) (citing United States v. Dunnigan, 507 U.S. 87, 94 (1993)). Petitioner has made no showing that Collins was incorrect or, if he was, that he willfully gave false testimony, rather than made a mistake as to his whereabouts. Moreover, where Collins was before the attack is clearly not a material matter, as it has no bearing on any elements of the charged crimes.

In addition, petitioner has not demonstrated that the prosecution was aware of the supposed falsity of Collins's testimony. Defense counsel tried to secure subpoenas so that he could present testimony that the restaurant closed at 1:30 a.m.—contrary to Collins's testimony that he was there until 4:00 a.m.—but the trial court denied his request. (Trial Tr. at 144, 158.) There is nothing in the record to indicate that the prosecutor actually learned of any evidence contradicting his witness, and thus, there is no reason to believe he was aware that Collins's statement might be false.

"Where the government was unaware of a witness' perjury, . . . a new trial is warranted only if the testimony was material and the court [is left] with a firm belief that but for the perjured testimony, the defendant would most likely not have been convicted." United States v. Gallego, 191 F.3d 156, 162 (2d Cir. 1999) (internal quotation marks and citations omitted). Petitioner has certainly not met this high burden. In fact, there is not even a "reasonable likelihood" that the testimony alleged to be false affected the judgment of the jury, and therefore, in any event, petitioner's due process claim must fail. United States v. Sanzo, 673 F.2d 64, 68–69 (2d Cir. 1982). The trial jury obviously accepted Collins's trial testimony, even though petitioner cross-examined Collins and the other prosecution witnesses, and introduced an alibi witness—Mary Kirby—with a different version of events. Thus, petitioner's claim that the

prosecution knowingly presented perjured testimony must fail.[5]

G. <u>Ineffective Assistance of Counsel</u>

Petitioner's last argument—that trial counsel was ineffective for failing to call Velasquez and Biscette as witnesses—is also without merit. According to petitioner, defense counsel's decision not to call the two witnesses was not strategic, but resulted from a lack of resources and was unreasonable because "there were many options available to counsel" for securing the witnesses. (Pet'r Mem. at 41; <u>see also</u> Declaration in Support of Petitioner's Supplemental Habeas Petition Papers, dated June 1, 2010, at 1.) Petitioner also claims that the trial court's finding that there was no prejudice from defense counsel's failure to call the witnesses is "contrary to and an unreasonable application of federal law" because the jury was twice deadlocked on all charges, and there was no physical evidence linking Deberry to the crime. (Pet'r Mem. at 41.)

To prove a claim of ineffective assistance of counsel, petitioner must demonstrate that: (1) his counsel's performance was constitutionally deficient; and (2) the deficient performance prejudiced the defense. <u>Strickland v. Washington</u>, 466 U.S. 688, 687 (1984); <u>see also</u> <u>Panuccio v. Kelly</u>, 927 F.2d 106, 108 (2d Cir. 1991). With regard to the first prong, the Supreme Court has stated that constitutionally deficient performance "requires [a] showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." <u>Strickland</u>, 466 U.S. at 687; <u>see also</u> <u>Sepulveda v. United States</u>, No. 95-

---

[5] Respondent also argues that petitioner's claim is procedurally barred. (Resp't Mem. at 7.) However, the Appellate Division did not make a "clear and express statement" that this claim was procedurally barred and, therefore, it is not. See <u>Reid v. Senkowski</u>, 961 F.2d 374, 377 (2d Cir. 1992).

CV-2569, 1998 WL 355182, at *2 (E.D.N.Y. June 29, 1998) ("Although the Supreme Court has not established specific guidelines for evaluating the reasonableness of counsel's actions, courts should apply a 'strong presumption that counsel's conduct falls within the wide range of reasonable professional judgment'" (quoting Strickland, 466 U.S. at 690)). Under the second prong, petitioner must establish that there is a "reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.

To obtain federal habeas relief on a claim of ineffective assistance that was previously rejected by a state court, a petitioner must do more than convince the federal habeas court that, in its independent judgment, the state court applied Strickland incorrectly. Bell v. Cone, 535 U.S. 685, 699 (2002) (citing Williams v. Taylor, 529 U.S. 362, 365 (2000)). Rather, the petitioner must show that the state court applied Strickland to the facts of his case in an objectively unreasonable manner. Williams, 529 U.S. at 365; see also Sellan v. Kuhlman, 261 F.3d 303, 315 (2d Cir. 2001). To be "objectively unreasonable," a state court's application of clearly established federal law must involve "some increment of incorrectness beyond error . . . ." Sellan, 261 F.3d at 315 (internal quotations omitted).

In reviewing petitioner's ineffective assistance claim, raised in his motion to vacate the judgment of conviction, the trial court found that petitioner's motion had no merit because defense counsel's decision not to call Velasquez as a witness was "purely tactical" and that petitioner never explained what testimony Biscette would have proffered, much less why the failure to present him as a witness constituted ineffective assistance of counsel. (See Memorandum Decision, dated July 26, 2007, at 3.) Not only is the trial court's finding entitled to

deference, see U.S.C. § 2254(e)(1), but there is ample support in the record for the court's conclusion that the first prong of Strickland was not met. Petitioner's counsel did not try to obtain a material witness order to force Velasquez to testify for strategic reasons. Specifically, he thought that Velasquez would refuse to testify and, even if he was willing, it was generally a "bad idea" to put a reluctant witness on the stand because "you don't know what they are going to say." (Oct. 17 Hearing Tr. at 6.) Moreover, the record shows that even though financial constraints affected defense counsel's investigative efforts with respect to Biscette's statement to the police, he was nonetheless able to pursue alternative means of uncovering exculpatory evidence, including going to the scene of the shooting, finding out the opening and closing hours of B.B.Q.'s, and interviewing an alibi witness. (Id. at 7, 21–22.)

"A petitioner cannot meet the first prong of the Strickland test merely by showing that [his or] her counsel employed a poor strategy or made a wrong decision." Cotto v. Lord, No. 99 Civ. 4874, 2001 WL 21246, at *8 (S.D.N.Y. Jan. 9, 2001), aff'd, No. 01-2056, 21 Fed. Appx. 89, 2001 WL 1412350 (2d Cir. Nov.8, 2001). As a general matter,

> strategic choices made after thorough investigation of law and fact relevant to plausible options are virtually unchallengeable; and strategic choices made after less than complete investigation are reasonable precisely to the extent that reasonable professional judgments support the limitations on investigation. . . . In any ineffectiveness case, a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments.

Strickland, 466 U.S. at 690–91. An attorney's decision "whether to call specific witnesses—even ones that might offer exculpatory evidence—is ordinarily not viewed as a lapse in professional representation." United States v. Best, 219 F.3d 192, 201 (2d Cir. 2000) (citing United States v. Schmidt, 105 F.3d 82, 90 (2d Cir. 1997)); see also United States v. Smith, 198 F.3d 377, 386 (2d

Cir. 1999) ("The decision whether to call any witnesses on behalf of the defendant, and if so which witnesses to call, is a tactical decision of the sort engaged in by defense attorneys in almost every trial." (internal quotation marks omitted)).

Applying the deferential standard for strategic decisions in ineffective assistance of counsel cases, I find that defense counsel's failure to call Velasquez or investigate Biscette was not constitutionally defective. Defense counsel employed various investigative methods in an attempt to exculpate petitioner and made a decision, based on his experience with hostile witnesses, not to secure Velasquez's testimony. Therefore, petitioner has failed to satisfy his burden under the first prong of Strickland. As a result, it is unnecessary to consider the second prong of the test.

### CONCLUSION

For the reasons set forth above, I respectfully recommend that this petition for a writ of habeas corpus be denied. Any objection to this Report and Recommendation must be filed with the Clerk of the Court, with courtesy copies to Judge Gershon and to my chambers, within fourteen (14) days. Failure to file objections within the specified time period waives the right to appeal the district court's order. See 28 U.S.C. § 636(b)(1); see also Fed. R. Civ. P. 72, 6(a), 6(e).

Respectfully submitted,

/s/
ROBERT M. LEVY
United States Magistrate Judge

Dated: February 17, 2011
      Brooklyn, New York